**Matthew HUDSON, Appellant,**

v.

**CAVE HILL CEMETERY; Honorable John B. Coleman, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2010–SC–000223–WC.

Supreme Court of Kentucky.

Jan. 20, 2011.

Wayne C. Daub, Louisville, KY, Counsel for Appellant, Matthew Hudson.

Melanie Brooke Gabbard, Allen Kopet & Associates, PLLC, Lexington, KY, Counsel for Appellee, Cave Hill Cemetery.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) found in this medical reopening that correspondence between the claimant's attorney and an insurance adjuster showed the existence of a settlement between the parties. The Workers' Compensation Board (Board) reversed and directed the ALJ to enter an order finding that no settlement was reached and denying the claimant's motion to enforce the agreement. The Court of Appeals affirmed the Board.

Appealing, the claimant asserts that the ALJ's decision was correct and should be reinstated. He argues that the parties' correspondence constitutes the memorandum of agreement required by KRS 342.165(1) and that the essential terms of the agreement are clear. We disagree and affirm.

The amount of lump sum proceeds to be allocated to a Medicare Set–Aside Account may have legal and financial consequences for the parties. It is an essential element of a settlement that includes such an account. The parties' alleged settlement was incomplete because they agreed to establish a Medicare Set–Aside Account but had yet to agree to the allocation.

An approved Form 110 Settlement Agreement filed in the initial claim refers to a cervical spine injury, headaches, and psychological complaints that the claimant sustained from a work-related injury on July 30, 2001. It indicates that the parties agreed to settle the claim in January 2003 for previously-paid temporary total disability benefits and a lump sum that represented a 10.69% permanent partial disability. The agreement did not include a waiver or buyout of past or future medical expenses or the right to reopen for additional income benefits.

The claimant required post-award medical treatment and eventually applied for Social Security Disability benefits because his physical and mental conditions worsened. He filed a motion to compel the employer to pay medical expenses for treatment being rendered by his chiropractor. The employer filed the present medical fee dispute and reopening shortly thereafter to contest causation and the reasonableness/necessity of ongoing prescription medications and psychiatric treatment, which included a month-long hospitalization in 2004. The parties completed proof; were heard on September 19, 2007; and received 30 days for briefing. The hearing order states that the matter would be submitted for a decision on October 21, 2007.

The ALJ rendered an opinion and order on November 15, 2007 that relieved the employer of responsibility for the disputed psychiatric treatment and medications but ordered the employer to pay for an appropriate rehabilitation and detoxification program as described by Dr. Mufson. The claimant's attorney, Edward Mayer, filed a petition for reconsideration.

Mayer based the petition on exchanges that took place during the period from October 16 through October 19, 2007 between himself and Tracy Walnista, the claims adjuster for the employer's insurance carrier, and between himself and Ronald Pohl, the employer's attorney. Mayer asserted that the parties settled their dispute as a result of the carrier's October 16, 2007 settlement offer, which he accepted on the claimant's behalf in a letter faxed to the adjuster on October 19, 2007. As a consequence, neither party filed a brief to the ALJ. Mayer stated that he requested Pohl to prepare a Form 110 Settlement Agreement on two occasions but that the form had yet to be prepared.

Pohl responded on the employer's behalf that the petition alleged no patent error in the ALJ's decision. He stated that the parties failed to reach a final settlement because they failed to come to terms concerning the outstanding hospital bill or the Medicare Set–Aside.[1] Moreover, they failed to reduce an agreement to a memorandum as required by KRS 342.265 or submit it to the ALJ for approval, and nothing guaranteed that it would have been approved had they done so.

ALJ Smith entered an order denying the petition that also stated, "[T]here is no enforceable Agreement pursuant to KRS 342.265." Appealing, the claimant asserted that his petition "clearly requested the [ALJ] to enforce the agreement entered into between the parties." He argued that the ALJ erred by failing to grant the petition and schedule a hearing to determine whether a settlement agreement existed.

The Board vacated the order denying reconsideration to the extent that it stated

---

1. 42 U.S.C. 1395y(b)(2), the Medicare secondary payer exclusion, prohibits Medicare from paying an expense that has been made or can reasonably be expected to be made under a workers' compensation award. The statute permits Medicare to recover such a payment from the primary plan, any entity that has received payment from primary plan, or any entity that has received payment from the proceeds of the primary plan's payment. 42 C.F.R. 411.46 requires a lump-sum workers' compensation settlement that includes future medical benefits to consider Medicare's interests adequately for the remainder of the worker's life expectancy. When an injured worker who is entitled to Medicare or has a reasonable expectation of Medicare enrollment within 30 months of a settlement that provides benefits totaling more than $250,000, a proposed settlement agreement may be submitted to the Centers for Medicare and Medicaid Services (CMS) for approval in order to establish that it sets aside a reasonable amount to pay future injury-related medical expenses.

there was no enforceable settlement agreement. The Board reasoned that the ALJ could resolve the existence of a settlement agreement only after a verified motion to approve the agreement was filed and the parties received a reasonable period to submit proof.

The parties substituted counsel and sometime thereafter the claimant submitted a verified motion to enforce the alleged agreement. ALJ Coleman held a hearing at which Mayer testified concerning his conversations and correspondence with Walnista and Pohl. Mayer explained that the parties' dispute concerned medications for the 30–year–old claimant that totaled from $1500 to $2000 per month and a hospital bill of about $33,000. He testified that Walnista contacted him on October 16, 2007 and offered to settle. His hand-written notes of the conversation state as follows:

> 10/16/07; Tracy Walnista [phone number omitted]; Matthew Hudson; offered $500,000 to include set aside—Good thru 10/19/07; not to be extended; [fax number omitted].

Mayer introduced a transmittal sheet, which indicated that he faxed the following message to Walnista on October 19, 2007:

> *Matthew Hudson v. Cave Hill Cemetery*; we accept the offer of $500,000—Hudson has not yet been approved for SSD.

Mayer submitted a letter he received from Walnista, dated October 19, 2007, which stated in pertinent part as follows:

> I am in receipt of your fax dated 10/19/07 advising that your client, and our claimant, Mr. Hudson has agreed to accept our settlement offer in the amount of $500,000 as a full and final resolution of his worker's [sic] compensation claim. I have forwarded a copy of the claim file to our defense attorney

Ronald Pohl and asked that he draft up the settlement papers. . . . A copy of the papers will be sent for your review within the next 30 days.

> In addition, I have contacted NuQuest to obtain some information on how we should proceed with handling the Medicare Set–Aside issue in light of the fact that Mr. Hudson is reportedly in the process of appealing his denial on this request for SSDI benefits.

Mayer testified that he failed to draft the agreement himself because Walnista wanted Pohl to draft it. He stated that he telephoned Pohl, who was unaware of the offer; informed him that they would not need to file briefs; and asked him to prepare a Form 110. He stated that Pohl agreed to prepare the Form 110 but failed to do so despite at least two additional requests.

Mayer admitted when cross-examined that he failed to inform the ALJ of the settlement before the November 15, 2007 decision. Questioned about whether he and Pohl ever agreed to a specific breakdown of the amount allocated to buy out medical expenses or to the Medicare Set–Aside, Mayer responded, "No, but nobody ever cares, as you know."

ALJ Coleman determined that the parties reached a valid settlement agreement. Viewing the case as being "very similar" to *Coalfield Telephone Company v. Thompson*,[2] the ALJ noted:

> The only difference is that this case dealt with written correspondence between [the claimant's attorney and] an insurance adjuster rather than the attorney for the defendant. However, the [ALJ] places very little significance on this fact as every practitioner in this field realizes that it is the insurance carrier who gives the authority to counsel for settlement of the claims.

---

**2.** 113 S.W.3d 178 (Ky.2003).

Convinced by Mayer's correspondence with Walnista and his testimony that his client considered the specific amount to be set aside for each waiver of his right to additional benefits to be unimportant, the ALJ found that the parties agreed to a complete buyout of the claimant's rights under Chapter 342 for $500,000.00 and agreed to clarify the amount allocated for a Medicare Set–Aside when that information was obtained.

 KRS 342.610(1) places the primary liability for workers' compensation benefits on employers. Although KRS 342.640(1) requires every employer subject to Chapter 342 to insure its liability and although an employer's contract with its worker's compensation insurance carrier may provide for legal representation in defending a claim, the attorney providing an insurance defense represents the employer rather than the carrier.[3] Regardless of whether an employer's insurance contract requires the carrier to authorize a settlement, the employer is the real party in interest.

KRS 342.265(1) promotes the prompt disposition of workers' compensation claims with a minimum of expense by permitting parties to agree to settle their dispute.[4] The statute requires an ALJ to approve the parties' agreement, after which KRS 342.305 permits it to be enforced in circuit court as a judgment. *Thompson* stands for the principle that an ALJ may approve a settlement based on correspondence between the parties if the correspondence memorializes of all of the terms to which they agreed and neither party asserts that the terms are incomplete. Neither KRS 342.265 nor *Thompson* should be construed as encouraging hastily-drafted and incomplete settlement agreements.

The correspondence in the present case failed to show the existence of a complete settlement agreement such as was present in *Thompson*. The amount of lump sum proceeds to be allocated to a Medicare Set–Aside Account may have legal and financial consequences for the parties. The allocation is an essential element of a settlement that includes such an account. Although the dispute before ALJ Smith concerned only medical expenses, Walnista's offer and letter of October 19, 2007 refer to a full and final resolution of the claim for $500,000.00 "to include set aside." The claimant acknowledges that the lump sum included his right to future income as well as medical benefits. The agreement was incomplete under the circumstances because the parties clearly had not come to terms concerning the portion of the lump sum to be allocated to the Medicare Set–Aside Account.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

---

3. *See Chappell v. Kuhlman Electric Corp.*, 304 S.W.3d 8 (Ky.2009).

4. *Newberg v. Weaver*, 866 S.W.2d 435 (Ky. 1993).