# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 17, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000299-WC

CROSS MAINTENANCE, LLC                                                    APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.            CASE NOS. 2014-CA-001485-WC AND 2014-CA-001593-WC
WORKERS' COMPENSATION BOARD NO. 12-70373


MARK R. RIDDLE;
HONORABLE WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                    APPELLEES


AND                               2015-SC-000306-WC


MARK RIDDLE                                              CROSS-APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.            CASE NOS. 2014-CA-001485-WC AND 2014-CA-001593-WC
WORKERS' COMPENSATION BOARD NO. 12-70373


CROSS MAINTENANCE, LLC;
HONORABLE WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                          CROSS-APPELLEES


### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Cross Maintenance, LLC, appeals a Court of Appeals decision

regarding an alleged settlement agreement between itself and Appellee, Mark R.

Riddle. Cross argues that there was not an enforceable settlement agreement because: 1) the Administrative Law Judge ("ALJ") rendered an opinion and award before the parties reached an agreement and thus KRS 342.285(1) made his findings binding on the parties; 2) the ALJ's opinion and award was unbeknownst to the parties while the negotiations were ongoing creating a mutual mistake of fact which prevents enforcement of the settlement; and 3) the parties' failure to negotiate when the weekly payments would commence shows the settlement agreement was incomplete and therefore unenforceable. Riddle cross-appeals from the Court of Appeals decision arguing that it was error to remand the matter to the ALJ to determine if the settlement agreement reached between the parties was for a complete dismissal of all rights. For the below stated reasons, we affirm the Court of Appeals.

Riddle filed a workers' compensation claim on May 9, 2013, following a work-related accident which caused him to lose range of motion and grip strength in his left hand. In the days surrounding the October 23, 2013 evidentiary hearing, the parties engaged in ongoing settlement negotiations. Riddle was represented by Chris Evensen and Cross by Douglas U'Sellis.

On October 24, 2013, Jason Swinney from U'Sellis's office, sent the following e-mail to Evensen:

> Chris,
> I received authority from [Cross] to offer Mr. Riddle a lump sum of $25,000 plus weekly benefits of $150 to be paid for 425 weeks. I know [the ALJ] is deciding the claim, but I think we can make a strong argument that Bilkey's rating is not accurate. Specifically, Dr. Bilkey rated Mr. Riddle for an impairment for the fifth digit despite Mr. Riddle's testimony that he does not even experience symptoms in the fifth digit. His overall rating is also higher than

2

the rating that would be appropriate if your client actually had amputations at the PIP joint for the third and forth digits.

This settlement offer gives your guy a lump sum with the security of additional income to compensate him for any lost earning capacity. This also does not appear to be the type of injury that would require any type of ongoing medical treatment, so it seems mutually beneficial to buy the claim out in its entirety. If [the ALJ] awards benefits based on Dr. DuBou's 5% impairment, than your guy is going to be receiving $10 to $40 per week after deducting for fees and costs, so there is certainly plenty for him to lose.

Let me know what your guy thinks.

Evensen quickly responded with the following e-mail:

Just so I understand the terms, is this with all rights open? Or is this for a complete dismissal? Or, something else?

Swinney responded that the offer "would be for a complete dismissal."

That same day, Evensen made a counter offer by the following e-mail:

Counter demand:
(1) $50,000.00 up front
(2) $200.00 per week for 425 weeks
(3) Complete dismissal of all future rights (assuming all medical expenses to date have been paid – I think they have, but don't want some bill popping up).
Total Pay-out over time is $135,000.00
If we proceed to the Judge, Mr. Riddle is going to get an award as follows:
22% IMPAIRMENT WITH THE (3.4) FACTOR
$406.56 X 22% x (1.15) x 3.4 = $349.72 per week for 425 weeks, which would be a total pay-out of $148,631.00
Thus, my demand provides your client a reduction in the amount of indemnity benefits it will have to pay and it lets them off the hook for medical coverage.
I expect a quick opinion, so please provide a response as soon as possible.

Evensen did not receive the requested quick response to his counter demand because the next correspondence between the parties occurred by the following e-mail on November 22, 2013 written by U'Sellis:

3

Hi Chris
We haven't yet received an e-mail today, but I am assuming that the [ALJ] has not yet issued a decision on this claim. My last offer had been for a lump sum of $25,000, plus $150 per week for 425 weeks. Your last demand had been for a lump sum of $50,000, plus $200 per week for 425 weeks. I have spoken further with my client. They have authorized me to offer $40,000, plus $175 per week as a compromise. Please discuss that with your client as soon as possible, and let me know if she [sic] is agreeable. Thank you.

Doug

U'Sellis later wrote the following on a print out of that e-mail, "Past meds open through 11-22-13, all other rights waived." After that e-mail was sent, U'Sellis and Evensen had a telephone conversation in which Evensen stated he was going to recommend Riddle accept the settlement. Later that day, U'Sellis sent an e-mail to the ALJ asking that he delay the rendition of his decision because he thought a settlement could be reached.

Also on November 22, 2013, Evensen sent U'Sellis and the ALJ the following e-mail:

Dear Judge Rudloff and Doug,
I am writing to advise [Riddle] has accepted [Cross's] offer and this claim is settled. Therefore, there will not be a need for Judge Rudloff to issue an opinion. Form 110 to follow.

Chris Evensen.

Evensen then sent the following e-mail to U'Sellis:

Dear Doug,
I am writing to advise we accept your offer and this claim is settled. I attempted to 'reply to all' from your e-mail to the judge advising we are settled. However, I am working off of a cell phone and am not positive it went through. Accordingly, I request you e-mail the judge's office advising we are settled.

Unbeknownst to either party or their attorneys, the ALJ actually rendered his opinion and award on November 21, 2013, a day before U'Sellis's e-mail was sent.

On November 25, 2013, Evensen sent U'Sellis the following e-mail:

Dear Doug,
I trust you received the two e-mails I sent out on Friday 11/22/13 in which I (a) advised you we accepted your offer and the claim was settled and (b) 'Replied to all' in response to your e-mail to Judge Rudloff and his staff (cc'd to me) wherein you advised Judge Rudloff and his staff we were negotiating. In my responsive e-mail, I advised the Judge and you we had accepted your offer and the claim was settled. I informed a Form 110 settlement agreement would follow.
Today's mail contained the Opinion. Obviously, it is my position we had all the material terms in writing (string of e-mails), a valid offer, and a valid acceptance before either of us were aware of the Judge's ruling. Therefore, I believe under controlling contract law and applicable precedent, *Coalfield Tel. Co. v. Thompson*, 113 S.W.3d 178 (Ky. 2003), we have an enforceable agreement. I am attaching a draft of a Form 110 settlement agreement. I request you review the Form 110 and advise if any changes need to be made. If it meets with your approval, please advise and I suggest we file the Form 110 along with a Joint Motion to Vacate/Set aside the Opinion.
Please let me know.

Later that day, U'Sellis responded via the following e-mail:

Chris,
I haven't seen the decision. I agree that we had a valid settlement. What did he rule?

Doug

Evensen sent U'Sellis a completed Form 110 Agreement. The form stated that this was a compromise settlement of a disputed claim. The following monetary amounts were provided as consideration for the following waivers: Waiver or buyout of past medical benefits -- $5,000.00; Waiver or buyout of

5

future medical benefits -- $25,000.00; Waiver of vocational rehabilitation -- $5,000.00; Waiver of the right to reopen -- $5,000.00. The form also contained the following language:

> In an effort to resolve the claim, [Riddle] and [Cross] have each compromised their respective positions and have agreed to enter into this Settlement Agreement. [Riddle] is agreeing to accept $40,000.00 payable in a lump sum and $175.00 per week for 425 weeks, beginning the date this Form 110 is approved, in exchange for a complete dismissal of his claim for indemnity benefits (TTD, PPD, PTD and/or death benefits), medical expenses/benefits, right to reopen and vocational rehabilitation, with prejudice.
> The Employer will pay Riddle and his attorney $40,000.00 in a lump sum and $175.00 per week for 425 weeks in exchange for a complete dismissal of this claim and all rights under the Workers' Compensation Act.

U'Sellis sent an e-mail to Evensen on December 4, 2013, stating that he was no longer authorized by Cross to sign the Form 110. By this time, U'Sellis had reconsidered his position that the parties had an enforceable settlement because the agreement was partially negotiated and finalized after the ALJ's opinion and award had been rendered. Evenson filed a motion to enforce the settlement. The ALJ subsequently reopened proof, limiting the evidence to be "solely to the question of whether a meeting of the minds in regard to all terms of the alleged settlement arose, thus rendering the alleged settlement agreement enforceable."

At a hearing held by the ALJ, U'Sellis provided the following answers to questions on why he changed his mind about the agreement's enforceability:

> Question: Now, on your e-mail of November 25th, where you indicated that you thought you had a valid settlement, at that time were you aware that a decision had been rendered?

6

U'Sellis:    I was aware that a decision had been rendered. I didn't know when.

. . .

Question:    And after you had indicated that there was a valid agreement, what caused you to change your mind about having a valid agreement?

U'Sellis:    A couple of things; primarily the fact that the decision from the Judge was actually rendered before we started our settlement negotiations and then looking at the case law dealing with enforceability of settlements, I questioned whether we had enough detail, although admittedly we had all the detail of the payments, but whether under the case law if there was enough detail that there was a valid agreement, if you put aside the issue of the timing of the [ALJ's] decision.

. . .

I do have one additional item to bring up. In terms of [Evensen] having asked whether I had authority from my client, I did have the authority that I extended. Had my client known that the case had already been decided, I don't know if I would have had the same authority. I was dealing with – sort of, a conflict between an adjuster and a supervisor – a supervisor who didn't want to settle the case and an adjuster who did. Had they known that a decision had already been rendered that might have changed the authority I would have been extended.

The ALJ entered an opinion and order sustaining the motion to enforce the settlement. Relying on *Coalfield Tel. Co.*, 113 S.W.3d 178, the ALJ found that the parties had a meeting of the minds and reached an agreement to settle the case for a lump sum of $40,000 plus $175.00 per week for 425 weeks. Cross filed a petition for reconsideration arguing that the ALJ failed to address several of his arguments in favor of not enforcing the settlement. The petition was denied.

Cross appealed to the Board arguing that there was not a meeting of the minds between the parties because certain details of the settlement were not included in their correspondence and that the ALJ failed to make rulings on material terms of the agreement. Specifically, Cross argued that there was no ruling as to whether: medical benefits would remain open until the day the settlement was reached; the parties agreed that a complete dismissal of Riddle's claim would occur upon approval of the settlement; the parties' failure to set a starting date for the weekly payments invalidates the settlement; and KRS 342.285(1) bars enforcement of the settlement. The Board found that KRS 342.285(1) and the failure to select a starting date for the payments did not bar enforcement of the settlement. However, the Board agreed with Cross that the ALJ did not make a finding that the parties intended there to be a complete dismissal of Riddle's claim in exchange for the settlement. The Board noted that while the Form 110 listed monetary amounts to be given for the waiver of certain benefits and stated that the claim was to be dismissed upon settling, there was no finding that said terms were included in the correspondence. The Board also found the ALJ did not determine whether the parties agreed to what period of time medical benefits were to remain open. Therefore, the Board vacated and remanded the ALJ's opinion and order for further fact finding.

The Board's instructions on remand included:

> Accordingly, the March 20, 2014, Opinion and Order finding the parties reached a settlement agreement, sustaining Riddle's motion to enforce the settlement agreement, and overruling Cross's objection and response and the April 10, 2014, Opinion and Order on Reconsideration affirming the decision are VACATED. This matter is REMANDED to the ALJ for a determination of whether

8

the parties' correspondence memorializes all of the terms of the settlement agreement. If the ALJ determines the correspondence establishes the parties reached a full and complete agreement, he shall enter specific findings of fact setting forth the essential terms of the agreement. However, if the ALJ determines the parties did not reach a full and final resolution of all disputed issues, he shall provide the findings of fact in support of his decision. Further, he shall then deny Riddle's motion and reinstate the provisions of his November 21, 2013, Opinion and Order and rule upon Riddle's petition for reconsideration which he held in abeyance.

Cross appealed and Riddle cross-appealed to the Court of Appeals who affirmed. This appeal followed.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985).

Settlement agreements which have not been reduced to a final form can be found to be enforceable if correspondence between the parties indicate they agreed on the material terms. *Hudson v. Cave Hill Cemetery*, 331 S.W.3d 267

9

(Ky. 2011) (holding that correspondences between parties can constitute a valid agreement); *Coalfield Tel. Co.*, 113 S.W.3d 178 (Ky. 2003) (holding that letters from both parties to a workers' compensation settlement negotiation are evidence that the parties reached mutual agreement); *Skaggs v. Wood Mosaic Corp.*, 428 S.W.2d 617, 619 (Ky. 1968) (holding that KRS 342.265 does not require a settlement agreement to be in a final written form if there is written evidence of the terms of the agreement).

## I. KRS 342.285(1) DID NOT BIND THE PARTIES TO ADHERE TO THE ALJ'S ORIGINAL OPINION AND ORDER

Cross first argues that the Board and Court of Appeals erred by finding KRS 342.285(1) did not bind the parties to adhere to the ALJ's original opinion and order. KRS 342.285(1) states:

> An award or order of the [ALJ] as provided in KRS 342.275, if petition for reconsideration is not filed as provided for in KRS 342.281, shall be conclusive and binding as to all questions of fact, but either party may in accordance with administrative regulations promulgated by the commissioner appeal to the [Board] for review of the order or award.

Cross argues that since the parties were unaware of the terms of the ALJ's opinion and order before they entered into a settlement, the opinion and order became binding upon them, and prevented the settlement agreement from being enforceable. We disagree. KRS 342.285(1) does not prevent the parties from entering into a settlement agreement after the ALJ has ruled. Cross acknowledges in his brief that workers' compensation claims may be settled after the entry of an ALJ's opinion and order. KRS 342.285(1) only stands for the proposition that a party must file a petition for reconsideration to later

appeal to the Board a factual finding made by the ALJ. This does not prohibit the parties from making a motion to enforce a later negotiated settlement. The fact that the parties were unaware of the terms of the ALJ's ruling while negotiating goes to the merits of Cross's second argument, whether there was a mutual mistake of fact which prevents enforcement of the settlement.

## II. THERE IS INSUFFICIENT EVIDENCE AT THIS TIME TO SHOW A MUTUAL MISTAKE OF FACT OCCURRED

Cross's second argument is that there was a mutual mistake of fact between the parties because the settlement negotiations were based on their common belief that the ALJ had not rendered an opinion and order. Cross argues that if the parties knew the ALJ had rendered an opinion and order, one or both of them might have withdrawn from settlement negotiations. Cross analogizes this situation to the "barren cow" scenario as outlined in *Sherwood v. Walker*, 66 Mich. 568, 22 N.W.919, 923 (1887) (holding that a sale of a supposedly barren cow could be rescinded when it was discovered the cow was actually pregnant). Again, we must disagree.

To prove that a mutual mistake of fact occurred, which caused the parties to not have a meeting of the minds, Cross must prove that: 1) the mistake was mutual, not unilateral; 2) the mutual mistake is proven in the record by clear and convincing evidence; and 3) the parties had actually agreed upon terms different from those expressed in the written instrument. *See Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006). In this matter, while it is clear that both parties were mutually unaware of the ALJ's

11

opinion and order while negotiating the settlement, it cannot be said at this time that Cross is being held to terms different from those expressed in the correspondence between the parties. The lump sum amount, weekly payment, and duration of payments are all identical to what was negotiated for in the settlement. We do note, however, that this matter is being remanded to the ALJ for further findings of fact regarding if the parties agreed how long medical benefits were to remain open and if the settlement was in exchange for a full waiver of Riddle's rights. If there is insufficient correspondence for the ALJ to make findings regarding those elements of the settlement agreement and those terms are material to the agreement, the Board has instructed the original opinion and award of the ALJ to be reinstated and the motion to enforce the settlement to be dismissed. We agree with the Board that remand for further fact finding is appropriate.[1]

### III. THE FAILURE TO SET A DEFINITE DATE WHEN WEEKLY PAYMENTS ARE TO BEGIN DOES NOT RENDER THE SETTLEMENT AGREEMENT UNENFORCEABLE

Cross's final argument is that the parties' failure to negotiate a starting date for the payment of the weekly benefits makes the settlement incomplete and unenforceable. The Board and Court of Appeals both held that the failure to select a date was inconsequential and not fatal to the settlement agreement.

---

[1] This matter does not fall within the above mentioned "barren cow" scenario because the parties in that case bargained for the cow based on an understanding that she could not have calves. In this matter, the parties knew the actual value of Riddle's workers' compensation claim could vary and their attempt to settle was a gamble of sorts.

Cross disagrees, arguing that if the starting date for the payments is set by the ALJ as the date of the injury, then it would be liable to pay past due benefits in addition to the lump sum amount already negotiated and thus would suffer greater liability.

However, the date for commencement of Riddle's weekly payments was not a term material or essential to the parties' agreement. In fact, without a specific negotiated starting date between the parties it can be presumed the payments will start once the settlement is approved by the ALJ. On remand, we trust that the ALJ will review the record and determine if the parties came to an agreement on what date payments should commence. If there is no such correspondence we trust the ALJ will select a date without altering the agreement terms or adversely affecting the rights of the parties.

## IV. THE BOARD CORRECTLY REMANDED THE MATTER FOR FACT FINDING ON WHETHER THE PARTIES ENTERED INTO THE SETTLEMENT FOR A COMPLETE DISMISSAL OF THE CLAIM

Riddle has cross appealed arguing that the Board erred by vacating and remanding this matter because by agreeing to enforce the settlement, the ALJ made an implied finding that the parties agreed the settlement would be entered into in exchange for a complete dismissal of the claim. Riddle argues that his tendered Form 110 stated that there would be a complete dismissal of the claim and that Cross never made a settlement offer that did not include that term. However, while the record may ultimately show that Riddle is correct, the fact remains that the ALJ did not make such a determination when originally adjudicating this claim. The matter needs to be remanded to the ALJ

for proper fact finding and a final determination of whether the parties negotiated for a complete dismissal of the claim in exchange for the settlement.

For the above stated reasons, we affirm the decision of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT/CROSS-APPELLEE,
CROSS MAINTENANCE, LLC:

Douglas Anthony U'Sellis

COUNSEL FOR APPELLEE/CROSS-APPELLANT,
MARK R. RIDDLE:

Christopher P. Evensen

14