# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 17, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000286-WC

CENGAGE LEARNING, INC.                                                  APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2015-CA-000080-WC
WORKERS' COMPENSATION NO. 13-75846


REENEACE CLEMONS;
HONORABLE J. LANDON OVERFIELD,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                    APPELLEES


## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Cengage Learning, Inc., appeals a Court of Appeals decision which ultimately affirmed an order of the Chief Administrative Law Judge ("CALJ") that held there was not a meeting of the minds on a settlement agreement negotiated between Cengage and Appellee, Reeneace Clemons. Cengage argues that the CALJ's refusal to enforce the settlement agreement is erroneous because there is sufficient evidence to show the parties entered into a valid contract. For the below stated reasons, we affirm the Court of Appeals.

Clemons alleged that on June 7, 2013, she suffered a work-related low back injury. After she reached maximum medical improvement, Clemons

and Cengage began to negotiate a workers' compensation settlement. Clemons initially hired an attorney, but terminated his representation during settlement discussions.

On April 7, 2014, Cengage sent a letter to Clemons which stated its purpose was "to discuss potential settlement of her claim." The letter included two offers: the first would be for payments of $33.62 per week with no waivers and the second was a lump sum payment of $10,000 for a full and final settlement of Clemons's claim. Following each proposal was a line where Clemons could sign if she accepted that option. The end of the letter stated that it was a "settlement offer."

Clemons sent Cengage a letter on April 14, 2014, which proposed "an alternative potential settlement." Clemons countered with two different offers where she would be paid either $72.11 per week with no waiver of future rights or a lump sum of $20,000 to resolve all issues. She attached medical records from Dr. Steven Bailey, Dr. James Keller, and Dr. John B. Kelly to support her request for an increased settlement amount. Dr. Bailey recommended Clemons undergo lower back surgery.

Cengage responded on April 18, 2014, indicating that it would pay Clemons the $20,000 lump sum for a full and final settlement of the claim. It forwarded a Form 110 to Clemons with an attached cover letter. The cover letter stated that Clemons had the right to have the agreement reviewed and explained to her by an attorney of her choosing. The letter further stated that

"If the Settlement Agreement meets with your approval, please immediately sign the Settlement Agreement . . . and return same to my office."

Clemons did not sign the Form 110. Instead on June 10, 2014, she hired attorney Jillian M. Scheyer to represent her. Scheyer informed Cengage that Clemons was no longer interested in settling for the $20,000 lump sum. Cengage responded that it considered the matter settled and requested that Clemons sign and return the agreement.

On June 26, 2014, Cengage filed a motion to enforce and approve the settlement agreement. Cengage argued that the letter from Clemons proposing a $20,000 lump sum settlement and its response agreeing to that amount constituted a meeting of the minds and the existence of a binding and enforceable contract. Clemons responded that after receiving the Form 110 she decided to undergo the recommended back surgery and became concerned with the language of the agreement. Clemons also argued that the Form 110 sent to her by Cengage included terms that were not included in the letters exchanged between the parties and thus there was no meeting of the minds.

The CALJ issued an order on July 21, 2014, holding that there was no meeting of the minds as to the terms of the Form 110 sent to Clemons. The CALJ noted that a settlement agreement is not effective until approved by an administrative law judge. KRS 342.265 (1). A petition for reconsideration was filed by Cengage reiterating its argument, but it was denied. The Workers'

3

Compensation Board ("Board") affirmed in a two to one[1] opinion. The Board's majority held that since Clemons's letter gave Cengage two different options to settle the matter it indicated she was just negotiating instead of making a counter offer. The Court of Appeals affirmed, and this appeal followed.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The CALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985). For the below stated reasons, we affirm the Court of Appeals.

Cengage argues that the Court of Appeals and Board erred by affirming the CALJ because there was sufficient evidence that the parties had a meeting of the minds regarding the terms of the settlement. Cengage notes that

---

[1] Stivers, Member, dissented because he believed the CALJ did not have subject matter jurisdiction to rule on the motion. However, he opined that he agreed with the majority's finding that there was no meeting of the minds, and thus, no valid enforceable contract.

4

settlement agreements which have not been reduced to a final written form can be found to be enforceable contracts based on the parties' correspondence. *Hudson v. Cave Hill Cemetery*, 331 S.W.3d 267 (Ky. 2011) (holding that correspondence between parties can constitute a valid agreement); *Coalfield Telephone Co. v. Thompson*, 113 S.W.3d 178 (Ky. 2003) (holding that letters from both parties to a workers' compensation settlement negotiation are evidence that the parties reached mutual agreement); *Skaggs v. Wood Mosaic Corp.*, 428 S.W.2d 617, 619 (Ky. 1968) (holding that KRS 342.265 does not require a settlement agreement to be in writing if there is written evidence outlining the terms of the agreement). Cengage argues that the four elements which are necessary for a contract to be enforceable – offer, acceptance, consideration, and mutual assent – are present in this matter. *Utilities Electrical Machine Corp. v. Joseph E. Seagram & Sons*, 300 Ky. 69, 187 S.W.2d 1015, 1018 (Ky. 1945). First, Cengage states that Clemons's April 14, 2014 letter stating that she proposed accepting either $72.11 per week or a lump sum of $20,000 to settle her claim is an offer. Second, Cengage believes that its April 18, 2014 letter stating that it would pay her $20,000 for a full and final settlement of the claim constituted acceptance. Third, consideration was provided due to the proposed exchange of the $20,000 for Clemons's waiver of her right to reopen the claim. Finally, Cengage argues that there was a meeting of the minds between itself and Clemons based on the negotiations between the parties. Cengage argues that there is no evidence Clemons was unaware that accepting the lump sum settlement would extinguish her right to

future medical benefits before she received the Form 110 and that she clearly understood the terms of the offer.

The record supports the finding that Cengage and Clemons did not have a meeting of the minds regarding the settlement agreement. While correspondence not memorialized into a written contract can serve as evidence the parties achieved an enforceable agreement, in this matter Cengage's April 14, 2011 letter clearly stated that "If the Settlement Agreement meets with [Clemons's] approval, please immediately sign the Settlement Agreement . . . and return same to my office." This indicates that Cengage either gave, or at least acknowledged, that Clemons had the right to reject the settlement offer despite the prior negotiations. Additionally, Clemons stated that the Form 110 included terms that she was unaware of during the negotiation and not included in the parties' correspondence. It is important to note that Clemons was without an attorney when she proposed the alternate settlement and upon receiving the advice of counsel became concerned with the terms of the tendered Form 110. This indicates she and Cengage did not have a complete meeting of the minds on the settlement terms.

Further, we note that the facts in this matter are distinguishable from two of the cases where written correspondences indicated the existence of a meeting of the minds. In *Skaggs*, 428 S.W.2d 617, there was a cancelled check along with written correspondence which showed the parties had reached an agreement. Cengage never paid Clemons upon her rejection of the Form 110. In *Thompson*, 113 S.W.3d 178, the claimant wrote letters to his employer which

clearly showed the parties reached amenable terms. However, the claimant in *Thompson* died before he could sign a Form 110. In this matter, Clemons is still alive and the letters between the parties do not indicate that the parties achieved agreement on all of the elements of the settlement. Accordingly, this matter is more akin to *Hudson*, 331 S.W.3d 267, because like in that case all of the terms of the settlement were not outlined in the correspondence before Cengage sent Clemons the Form 110. The CALJ's finding that the parties did not achieve a meeting of the minds is supported by substantial evidence and should not be disturbed on appeal.

For the above stated reasons, we affirm the decision of the Court of Appeals.

Minton, C.J.; Cunningham, Hughes, Noble, Venters, and Wright, JJ., concur. Keller, J., not sitting.

COUNSEL FOR APPELLANT,
CENGAGE LEARNING, INC.:

Jeremy David McGraw

COUNSEL FOR APPELLEE,
REENEACE CLEMONS:

Jillian M. Scheyer