IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2021

**STATE OF TENNESSEE v. JOHN FOXX**

**Appeal from the Criminal Court for Knox County**
**No. 115120   G. Scott Green, Judge**

_____

**No. E2020-01711-CCA-R3-CD**

_____

Defendant, John Foxx, was convicted following a jury trial of sale of less than .5 grams of a Schedule II controlled substance, delivery of less than .5 grams of a Schedule II controlled substance, and simple possession. The trial court ordered Defendant to serve an effective fifteen-year sentence after application of the criminal street gang enhancement statute. On appeal, Defendant argues that the trial court erred in applying the criminal street gang enhancement statute because the statute is unconstitutional and because the evidence was insufficient to support application of the criminal street gang enhancement statute. Following our review of the entire record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Clinton E. Frazier, Maryville, Tennessee, for the appellant, John Foxx.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; Ashley McDermott and Jordan Murray, Assistant District Attorney Generals, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

This case arises from surveillance by law enforcement of Defendant's interaction with a confidential informant ("CI"), where law enforcement arranged for the CI to meet Defendant to purchase marijuana and crack cocaine. Defendant sold the CI a bag of marijuana weighing 3.53 grams and a pair of loose rocks that were confirmed to be crack cocaine weighing .36 grams. The controlled purchase occurred in an area of Knoxville known to be controlled by the Bloods street gang.

In November 2018, a CI informed Knox County law enforcement that crack cocaine and marijuana were being sold at the MLK Market in Knoxville. Knox County law enforcement conducted a controlled purchase at the MLK Market on December 12, 2018. Law enforcement provided the CI with $80 of law enforcement funds, placed a covert recording device on the CI, and transported him to the MLK Market.

Upon arriving at the MLK Market, the CI went into the hookah lounge next to the market because he saw Defendant walking into the lounge. Once inside the lounge, the CI approached Defendant. Defendant asked the CI what he needed and the CI responded that he wanted to buy $40 of marijuana and $40 of crack cocaine. In response to the CI's request, Defendant "went to the back" and returned with a small bag of marijuana and two loose rocks which he handed to the CI in exchange for $80. The CI then left the lounge and met back up with law enforcement where he turned over the items he had received from Defendant. One of the items was confirmed to be a small bag of marijuana weighing 3.53 grams. The other item was a pair of loose rocks that were confirmed to be crack cocaine weighing a total .36 grams.

The Knox County Grand Jury returned a presentment charging John Foxx ("Defendant") with one count of sale of less than .5 grams of a Schedule II controlled substance, one count of a delivery of less than .5 grams of a Schedule II controlled substance, and one count of distribution of a Schedule VI controlled substance not exceeding one-half ounce. Counts one and two related to the sale of a Schedule II controlled substance were charged to have occurred within 1,000 feet of a school zone. The presentment also specified that the State was seeking enhanced punishment under the criminal gang enhancement statute for counts one and two. Following a jury trial, Defendant was convicted of sale of a Schedule II controlled substance not in a prohibited zone, delivery of a Schedule II controlled substance not in a prohibited zone, and simple possession. The jury also found that the two Schedule II convictions should be enhanced under the criminal gang enhancement statute.

*Gang Enhancement Proof*

In the second part of the bifurcated trial dealing with the gang enhancement charges, Detective Tom Walker with the Knox County Sheriff's Office Gang Intelligence Unit testified as an expert in the fields of gang membership identification and gang activity. At the time of his testimony, Detective Walker had been a member of the Tennessee Gang Investigators Association (TGIA) since 1999. In 2005, Detective Walker was elected to be the state training coordinator for the TGIA. Detective Walker is a member of three other gang investigator associations in nearby states, and as a member of multiple gang investigator associations, he had completed 779 hours of training in the field. At the time of his testimony, Detective Walker had testified in forty-four trials as an expert witness in gang identification in Knox County courts and had also been certified as an expert three times in federal court and once in another county.

Detective Walker explained that gang member identification follows a two-prong assessment using Tennessee's statutory definition of gang membership and a "point system" that was developed by the TGIA. Detective Walker testified that points are assigned based on certain criteria associated with gang involvement, and an individual is considered a gang member if he or she has accumulated ten or more points. Detective Walker testified that he evaluated Defendant and calculated that Defendant had forty-four points on the TGIA scale which were accumulated by Defendant's wearing Bloods street gang colors, associating with known Bloods street gang members, having a felony criminal history, having been arrested for violent crimes, having gang tattoos, and gang membership confirmation through the Tennessee Department of Correction. Based on the details of his testimony, Detective Walker concluded that in his expert opinion, Defendant was a member of the Bloods street gang.

Detective Walker testified that the hookah lounge where the CI purchased the drugs from Defendant, as well as the entire block of MLK Avenue where the lounge was located, was known Bloods street gang territory. Detective Walker had been familiar with that area since he was a rookie patrolman and testified that "the drug arrests that have been made in there in the last 25 years . . . would go into the tens of thousands." Detective Walker also testified that the Bloods had been involved in selling marijuana and crack cocaine in that area and had controlled that area for "ever since [he] started like 25 years ago." He further testified that the Bloods "prevented" anyone else from conducting drug transactions in the area. However, individuals not affiliated with the Bloods could sell in the area if they paid a "street tax" to the Bloods.

In addition to Detective Walker's testimony, Stephanie Ogle testified as the keeper of the records for the Knox County Criminal Court. Through her testimony, the State introduced sixteen judgments of conviction for eleven individuals: (1) Eric Burney

(aggravated assault), (2) Dwight Shuler (possession with intent to sell cocaine), (3) Justin Jackson (aggravated assault), (4) Jefferson Grady (aggravated burglary), (5) Zachary Siler (attempted especially aggravated robbery), (6) Anthony Page (attempt to possess cocaine with intent to sell), (7) Antonio Williams (attempt to commit second-degree murder and two counts of aggravated assault), (8) Dequan Shannon (aggravated robbery with a gang enhancement), (9) Justin Jackson[1] (unlawful possession of a weapon and two counts of aggravated assault), (10) Lajuan Harbison (attempted second-degree murder), (11) Remeese Flood (aggravated assault and aggravated burglary). All of the above individuals were confirmed by Detective Walker to be members of the Bloods.

Other evidence included the testimony of Lieutenant Gordon Gwathney with the Knoxville Police Department who stated that he had daily interactions with Defendant for approximately a year at a low-income housing development in an area of "high activity" near the MLK Market. Lieutenant Gwathney identified Defendant at trial. Knoxville Police Department Investigator Jacob Wilson, a member of the Organized Crime Unit, testified to having participated in investigating Defendant during the controlled purchase and identified Defendant in numerous images admitted as exhibits showing Defendant at the hookah lounge, in the MLK Market, and in other locations on the MLK Avenue block.

The jury was instructed on the statutory criminal gang enhancements and found that Defendant was a criminal gang member, had committed a criminal gang offense, and that the criminal gang offense was committed for the benefit of the Defendant's criminal gang. The trial court merged the two Schedule II convictions and applied the criminal street gang enhancement, sentencing Defendant to an effective fifteen-year sentence. Defendant filed a timely motion for new trial arguing that the evidence was insufficient to support application of the criminal street gang enhancement statute and that the criminal street gang enhancement statute was unconstitutional. The trial court denied the motion for new trial in a written order. Defendant timely filed notice of this appeal.

**Analysis**

On appeal, Defendant argues that the trial court erred in applying the criminal street gang enhancement statute because the statute is unconstitutional and because the evidence was insufficient to support application of the statute. The State argues that the evidence was sufficient to apply the enhancement statute to Defendant's sentence and that the criminal street gang enhancement statute is constitutional. We agree with the State.

---

[1] Separate judgments of conviction were entered for "Justin Jackson." It is unclear in the record whether there are two individuals with that name or one individual with separate convictions in multiple cases.

*Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to uphold the application of the criminal gang enhancement statute to his sentence because Detective Walker's testimony merely speculated that Defendant's actions benefitted the Bloods street gang. The State argues that the evidence presented, by way of expert testimony, showed that the area where Defendant's drug sale occurred was controlled by the Bloods and that all persons conducting drug transactions at this location, including Bloods, would have to give the gang a portion of the profit for having conducted business in that area. Therefore, the State contends that it proved beyond a reasonable doubt that the gang derived a direct monetary benefit from Defendant's drug business in the MLK Market. We agree with the State.

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779.

The Criminal Gang Offense statute provides:
(a) As used in this section, unless the context otherwise requires:
(1) "Criminal gang" means a formal or informal ongoing organization, association or group consisting of three (3) or more persons that has:
  (A) As one (1) of its primary activities, the commission of criminal gang offenses;
  (B) Two (2) or more members who, individually or collectively, engage in or have engaged in a pattern of criminal gang activity;

(2) "Criminal gang member" is a person who is a member of a criminal gang, as defined in subdivision (a)(1), who meets two or more of the following criteria:

…

(D) Resides in or frequents a particular criminal gang's area, adopts their style or dress, their use of hand signs or their tattoos and associates with known criminal gang members;

…

(G) Is identified as a criminal gang member by physical evidence such as photographs or other documentation;

(3) "Criminal gang offense" means:

…

(B) The commission or attempted commission, facilitation of, solicitation of, or conspiracy to commit any of the following offenses on or after July 1, 2013:

…

(xxiv) The illegal sale, delivery or manufacture of a controlled substance or controlled substance analogue, as defined in §§ 39-17-417 and 39-17-454;

(xxv) Possession of a controlled substance or controlled substance analogue with intent to sell, deliver, or manufacture, as defined in § 39-17-417(a)(4) and § 39-17-454;

(4)(a) "Pattern of criminal gang activity: means prior convictions for the commission or attempted commission of, facilitation of, solicitation of, or conspiracy to commit:

(i) Two (2) or more criminal gang offenses that are classified as felonies; [and]

…

(iv) The criminal gang offenses are committed on separate occasions; and

(v) The criminal gang offenses are committed within a five-year period;

…

(b) A criminal gang offense committed by a defendant shall be punished one (1) classification higher than the classification established by the specific statute creating the offense if:

(1) The defendant was a criminal gang member at the time of the offense; and

(2) The criminal gang offense was committed at the direction of, in association with, or for the benefit of the defendant's criminal gang or a member of the defendant's criminal gang.

…

T.C.A. § 40-35-121(a), (b)(1)-(2) (2016). A criminal gang offense committed by a defendant shall be punished by two classifications higher than the classification established by the specific statute creating the offense if the criminal gang offense was committed for the benefit of the defendant's criminal gang or a member of the defendant's criminal gang. T.C.A. § 40-35-121(b)(2) (subsequently amended to provide for punishment only one

classification higher). The illegal sale or delivery of a controlled substance is a criminal gang offense. T.C.A. § 40-35-121(a)(3).

Detective Tom Walker, a certified expert in the fields of gang membership identification and gang activity, testified the following about the Bloods street gang:

> Bloods are a street gang that started in Los Angeles, California, in the 1970s. The [Crips], which is the rival gang that they're at war with, also started out in Los Angeles in the early 70s. The [Crips] started first and then the Bloods were kind of a gang that started to protect themselves. They were—they were people that didn't want to be [Crips]. They wanted to be part of something else so they formed the Blood street gang.
> …
> But the defendant I think in my opinion is a member of what was called the East Side Bloods for Knoxville, Tennessee.

The proof sufficiently shows that the Bloods are a criminal street gang. *See* T.C.A. § 40-35-121(a)(1).

Detective Walker testified that using a two-prong assessment that utilizes the statutory definition of a gang member, *see* Tennessee Code Annotated section 40-35-121(a)(2), and a point system developed by the TGIA, Defendant had accumulated forty-four points on the scale for wearing Bloods street gang colors, associating with known Bloods street gang members, having a felony criminal history, having been arrested for violent crimes, having gang tattoos, and having gang membership confirmation through the Tennessee Department of Correction. Exhibited to Detective Walker's testimony were photographs of the Defendant wearing Bloods street gang colors, depicting gang tattoos, and associating with known Bloods street gang members. Under the TGIA system, an individual is considered to be a gang member if he or she accumulates ten or more points. The record sufficiently supports the jury's finding that Defendant was a criminal gang member at the time of the offense. *See* T.C.A. § 40-35-121(a)(2).

"It is an offense for a defendant to knowingly. . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Cocaine is a Schedule II controlled substance. T.C.A. § 39-17-408(b)(4). Possession of a controlled substance or controlled substance analogue with intent to sell, deliver, or manufacture, as defined in § 39-17-417(a)(4) and § 39-17-454, is a criminal gang offense. T.C.A. § 40-35-121(a)(3)(B)(xxv). Defendant met with the CI who asked to purchase $40 of crack cocaine and $40 of marijuana. In response, Defendant "went to the back," collected the product and returned to the CI, handing him what is confirmed to be 3.53

grams of marijuana and .36 grams of crack cocaine. The proof sufficiently showed that Defendant committed a criminal gang offense.

Defendant argues that the evidence presented at trial failed to establish beyond a reasonable doubt that Defendant had knowingly possessed a controlled substance with the intent to deliver or sell "at the direction of, in association with, or for the benefit of the defendant's criminal gang or a member of the defendant's criminal gang." *Id*. Defendant further contends that the expert testimony offered by Detective Walker merely speculated that Defendant's actions benefitted the Bloods street gang. We disagree.

Admitted into evidence to document the existence of the Bloods street gang in and around the MLK Market were nineteen convictions of twelve confirmed members of the Bloods. *See* T.C.A. § 40-35-121(a)(4)(A). Detective Walker testified that the Bloods had been involved in selling marijuana and crack cocaine in the area in question for over twenty years and that only Bloods could sell in that area unless non-members paid a "street tax" to the Bloods street gang. The evidence shows that crack cocaine and marijuana were routinely being sold at the MLK Market in Knoxville which was controlled by the Bloods. Defendant sold confirmed marijuana and crack cocaine to a CI in a controlled buy near the MLK Market on December 12, 2018. Detective Walker opined that based on his experience working the area near the MLK Market and his expertise with gang membership identification and gang activity that Defendant's sale of drugs in the MLK Market area financially benefitted the Bloods' narcotics business in the area. Specifically, Detective Walker explained:

> As an organization, Bloods have been selling and have known to be[] selling in their sphere of influence the 2500 block of MLK, Magnolia, Linden Avenue, Parkside, Walter P. Taylor Homes, all those—that general area of what's called East Knoxville, that has been their territory for selling drugs and they—they show control over that area. Basically what they do is they prevent other gangs from coming in and selling drugs in their territory so they get more profit out of it. There are individuals that are not gang affiliated that sell drugs, but they are charged a street tax. In other words, if you want to sell in our area and –and not have us rob you every other day then you're going to pay us a street tax on whatever you sell.

In response to the question, "And how would that benefit the gang?" Detective Walker testified the following:

> Basically the—the more places you have and the more people you have selling drugs, the more money that comes into the gang as a

- 8 -

whole.  The individual that sells drugs, if you are a member of the gang, then obviously you don't have to pay the street tax.  You just have to give the gang a cut, which is less than a street tax.  But you also get the protection of the gang.

…

So the gang benefits by having more people out there selling drugs that are part of their gang bringing in more money, and the individual benefits [from] the protection of the gang, also having a known area to sell, which is high volume, and then they also make more money.

Viewed in the light most favorable to the State, the evidence is sufficient to support the jury's finding that Defendant's criminal gang offense of selling drugs in an area controlled by the Bloods was for the benefit of Defendant's criminal gang, the Bloods, in order for the application of the enhancement statute to Defendant's sentence.  *See* T.C.A. § 40-35-121(b).

Defendant's contention that Detective Walker's testimony merely speculated that Defendant's actions benefitted the Bloods amounts to an attack on the credibility of the State's expert witness.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  The credibility of the witnesses, the weight to be given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.  *State v. Dorantes*, 331 S.W.3d 270 (Tenn. 2011) (citing *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008)).  An appellate court may not reconsider the jury's credibility assessments.  *State v. Carruthers*, 35 S.W.3d 516, 558 (Tenn. 2000).  Defendant has presented insufficient evidence to meet his burden in order for this court to re-evaluate the credibility of the State's witness.

Defendant also argues that the State did not establish a nexus between the named gang members and the listed convictions.  Defendant's argument misunderstands the requirements laid out by the statute.  Following this court's decision in *State v. Bonds*, Tennessee Code Annotated section 40-35-121(b) was amended to include a requirement that there be a nexus between gang membership and the alleged criminal conduct.  *See State v. Bonds*, 502 S.W.3d 118, 154 (Tenn. Crim. App., at Knoxville, Apr. 7, 2016).  However, there is no statutory requirement that there be a nexus between gang members and their convictions.  The evidence regarding the named gang members and their convictions is required to prove the existence of a criminal gang, defined in Tennessee Code Annotated section 40-35-121(a)(1) as an organization, association or group of three or more persons with two or more members who have engaged in a pattern of criminal gang activity.  The statute requires only that there be a relationship between the alleged

criminal conduct of the defendant and that the defendant's criminal conduct be to the benefit of, or at the direction of, a criminal gang or criminal gang member.

*Constitutionality of Statute*

Defendant contends that Tennessee Code Annotated section 40-35-121 violates his right to substantive due process, specifically because subsection (a) does not itself require a nexus to criminal activity. Defendant argues that subsection (a) unconstitutionally allows for his sentence to be enhanced based solely on his association with a "gang member" who at some point committed an enumerated violent crime. The State claims that subsection (a) may not be read in isolation and that when read within the context of the statute, subsection (a) requires that there be a nexus between Defendant's criminal act and criminal gang activity. We agree with the State.

Our supreme court has recognized that "the Legislature has the authority to enact laws for the public safety, comfort and welfare." *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997). Because criminal law falls squarely within this domain, *see State v. Wyrick*, 62 S.W.3d 751, 792 (Tenn. Crim. App. 2001) (citing *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177, 183 (1912)), we have no trouble concluding that proscribing harmful street gang activity is a proper legislative purpose. *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016). The material inquiry is whether Tennessee Code Annotated section 40-35-121(b) is reasonably related to that legislative purpose. *Id.* When the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity, that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment. *Scales v. U.S.*, 367 U.S. 203 (1961). The *Bonds* court held that the previous version of Tennessee Code Annotated section 40-35-121(b), which did not include the requirement that the criminal gang offense be committed "at the direction of, in association with, or for the benefit of the defendant's criminal gang or a member of the defendant's criminal gang[,]" failed rational basis review and was violative of substantive due process because it was "devoid of language requiring the underlying offense to be somehow gang-related before the sentencing enhancement is applied." *Id.* at 156. Following the decision of this court in *Bonds*, the statute was amended to require a nexus between the gang-related criminal activity and the alleged criminal conduct of the defendant. T.C.A. § 40-35-121(b). Consistent with other opinions from this Court, we conclude that there is a nexus between the gang-related criminal activity of selling drugs and the criminal activity of selling drugs with which Defendant was charged sufficient to satisfy Constitutional Due Process.

Defendant argues that Tennessee Code Annotated section 40-35-121(a) violates due process because it "does not adequately provide for the necessary nexus requirement to criminal activity." Specifically, Defendant argues that without a nexus requirement with respect to the "pattern of criminal activity" as defined in Tennessee Code Annotated section 40-35-121(a)(4), Defendant's sentence may be enhanced "solely on his association with a 'gang member' who at some point committed an enumerated violent crime." Although subsection (a) does not itself include a nexus requirement, it may not be read in isolation. Subsection (a) of the statute defines the terms to be applied in subsection (b). Read in its entirety, the statute does not allow for a defendant to receive an enhanced sentence solely for associating with another gang member who has committed a violent crime "at some point." In order to receive an enhanced sentence, Defendant must be a member of a criminal gang, as statutorily defined, who commits one of the enumerated criminal gang offenses "at the direction of, in association with, or for the benefit of" Defendant's criminal gang or a member of the criminal gang. Subsection (a) read in conjunction with the entire statue is reasonably related to the legitimate legislative purpose of preventing harmful street gang activity and does not violate Defendant's right to due process. Defendant is not entitled to relief on this claim.

Defendant next argues that the criminal gang enhancement statute is an overbroad restriction on his right to expressive association. The State responds that the statute does not criminalize mere membership in or association with a particular organization, but rather, participation in the criminal aims of the organization, which is not protected by the First Amendment or the right to freedom of expressive association. We agree with the State.

The Supreme Court has recognized the "freedom of association" in two distinct lines of cases. *Roberts v. United States Jaycees*, 468 U.S. 609, 617 (1984). The first line of cases embodies a right of "intimate association." *Id*. at 618. In the second line of cases, the United States Supreme Court recognized "expressive association" or "the right to association for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." *Id.* However, the right to association for expressive purposes is not absolute, and the government may infringe upon that right by way of "justifiable regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive." *Id.* at 623.

This court has held that Tennessee Code Annotated section 40-35-121 does not prohibit an individual from exercising his or her right of expressive association by joining

a gang. *State v. William Jermaine Stripling*, No. E2015-01554-CCA-R3-CD, 2016 WL 3462134, at \*8 (Tenn. Crim. App., at Knoxville, Jun 16, 2016). Indeed, by the plain language of the statute, it cannot be applied to a defendant simply because the defendant was a member of a gang. *Id*. Instead, the statute creates an enhanced punishment for defendants who commit one of the defined "criminal gang offenses" and who were also a member of a gang. *Id*. Further, committing a criminal gang offense is not constitutionally protected conduct. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). As applied to the instant case, the applicable statute enhances the punishment for criminal conduct, the illegal sale of drugs, committed in furtherance of the criminal aims of a street gang. Mere association with the street gang is not the basis for the enhancement. Therefore, Defendant's claim that Tennessee Code Annotated section 40-35-121 violates his First Amendment rights to association and expression is without merit.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE